## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>VIRIDOS, INC.,[1]<br><br>           Debtor. | Chapter 11<br>Subchapter V<br><br>Case No. 25-10697 (CTG) |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) AUTHORIZING, BUT NOT DIRECTING, THE DEBTOR TO (A) PAY
PREPETITION EMPLOYEE AND INDEPENDENT CONTRACTOR WAGES,
SALARIES, AND OTHER COMPENSATION, AND (B) CONTINUE EMPLOYEE
BENEFITS PROGRAMS, AND (II) GRANTING RELATED RELIEF**

Viridos, Inc., as debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case"),[2] respectfully states the following in support of this motion (the "Motion"):

### Relief Requested

1.    The Debtor seeks entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order"): (i) authorizing, but not directing, the Debtor to (a) pay prepetition wages, salaries, other compensation to Employees (defined herein); (b) pay obligations to Independent Contractors (defined herein); (c) honor pre-petition severance and cashed-out Paid Time Off checks issued to recently Terminated Employees; and (d) continue employee benefits programs in the ordinary

---

[1]  The Debtor in this Chapter 11 Case and the last four digits of its U.S. taxpayer identification number is: Viridos, Inc. (3940). The Debtor's corporate headquarters is located at: 11149 N. Torrey Pines Road, La Jolla, CA 92037.

[2] A detailed description of the Debtor and its business, and the facts and circumstances supporting this Motion and the Debtor' Chapter 11 Case, are set forth in greater detail in the *Declaration of Eric Moellering in Support of Debtor's Chapter 11 Petition, First Day Motions and Related Filings* (the "First Day Declaration"), filed contemporaneously with the Debtor's voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code").

course, including payment of certain prepetition obligations related thereto; and (ii) granting related relief.  In addition, the Debtor requests that the Court (as defined herein) schedule a final hearing within approximately 21 days of the commencement of this Chapter 11 Case to consider approval of this Motion on a final basis.

### Jurisdiction and Venue

2.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtor confirms its consent, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a), 362(d), 363(b), 507(a), and 541(b)(1) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 9013-1(m).

### Background

5.      On April 14, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code as a debtor defined in Bankruptcy Code section

2

1182(1) and elected to proceed under Subchapter V of chapter 11 of the Bankruptcy Code pursuant to the Small Business Debtor Reorganization Act, as amended.  The Debtor continues to operate and manage its business as a debtor in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No trustee, examiner, or statutory creditors' committee has been appointed in this Chapter 11 Case.

### The Debtor's Workforce

6.      As of the Petition Date, the employs 18 people (collectively, the "Employees").  Of the Employees, 17 are full-time salaried Employees and one is a full-time hourly employee.  The Debtor also has one temporary employee (the "Temporary Employee"), whose services are provided to the Debtor through an employment agency (the "Employment Agency"), as well as five independent contractors (the "Independent Contractors").  Furthermore, the Debtor recently effectuated a reduction-in-force where it terminated 28 employees (the "Terminated Employees"[3]).  The Employees, Temporary Employee, and Independent Contractors include personnel who are intimately familiar with the Debtor's business, processes, and systems, and possess unique skills and experience with respect to the Debtor's business.  Without the continued, uninterrupted services of the Employees, the Debtor's business operations will be halted and the administration of the estate materially impaired.

7.      Many of the Employees, the Temporary Employee and Independent Contractors rely on their compensation and benefits to pay their daily living expenses. These workers will be unfairly harmed if the Debtor is not permitted to continue paying compensation and, with respect to Employees, providing health and other benefits during this Chapter 11 Case.   Thus, the

---

[3] None of the Terminated Employees were insiders of the Debtor.

3

Employees, the Temporary Employee and Independent Contractors will be exposed to significant financial constraints if the Debtor is not permitted to continue paying the Employees', the Temporary Employee's and Independent Contractors' compensation and providing the Employees with health and other benefits.

8.      The relief requested herein benefits the estate because it allows the Debtor to retain its skilled workforce, provide certainty to the Employees, the Temporary Employee and Independent Contractors that they will receive full compensation and benefits (if applicable) despite this Chapter 11 Case.  Additionally, retaining its staff allows the Debtor to avoid significant additional costs associated with recruiting, hiring, and training new personnel.  The Debtor respectfully submits that the relief requested herein is necessary and appropriate under the facts and circumstances of this Chapter 11 Case.

<u>**Employee Compensation and Benefits**</u>

9.      To minimize the personal hardship the Employees could suffer if prepetition Employee-related obligations are not paid when due or as expected and to maintain stability in the Debtor's workforce during the administration of the Debtor's Chapter 11 Case, the Debtor, by this Motion, seek authority, but not direction, to:  (a) pay and honor certain prepetition claims relating to, among other things, wages, salaries, and other compensation (including amounts owed to the Temporary Employee (through the Employment Agency) and Independent Contractors), payroll services, federal and state withholding taxes and other amounts withheld (including garnishments, Employees' share of insurance premiums, and taxes), health insurance, retirement health and related benefits, workers' compensation benefits, life insurance, short- and long-term disability coverage, and certain other benefits that the Debtor has historically provided in the ordinary course (collectively, the "<u>Employee Compensation and Benefits</u>"); and (b) pay all costs incident to the

4

Employee Compensation and Benefits.  Additionally, on April 1, 2025, the Debtor recently terminated the Terminated Employees as part of a reduction-in-force.  Pre-petition, the Debtor issued checks to the Terminated Employees for severance and cashed-out Paid Time Off (defined herein) amounts, certain of which checks remain uncashed as of the Petition Date.  The Debtor requests authority to honor or re-issue pre-petition checks to Terminated Employees on behalf of severance or cashed-out Paid Time Off.

10.     Subject to approval from the Court, the Debtor intends to continue its applicable prepetition Employee Compensation and Benefits in the ordinary course.  Out of an abundance of caution, the Debtor further requests confirmation of its right to modify, change, or discontinue any of its Employee Compensation and Benefits and to implement new programs, policies, or benefits in the ordinary course during this Chapter 11 Case in the Debtor's sole discretion and without the need for further Court approval, subject to applicable law.

11.     By this Motion, the Debtor seeks authority to make the following payments related to prepetition amounts owed on account of the Employee Compensation and Benefits:

| Employee Obligation | Interim Amount | Final Amount |
|---|---|---|
| Employee Compensation Gross Wages | $70,496.01 | $70,496.01 |
| Independent Contractor Obligations | $22,110.88 | $22,110.88 |
| Withholding Obligations | $78,365.52 | $78,365.52 |
| Payroll Processing Fees | $1,932.13 | $1,932.13 |
| Reimbursable Expenses | $0.00 | $0.00 |
| Employment Agency Fees | $8,479.33 | $8,479.33 |
| Severance and PTO to Terminated Employees | $66,771.66 | $66,771.66 |
| Employee Benefits Programs | $50,351.18 | $50,351.18 |

5

| Employee Obligation | Interim Amount | Final Amount |
|---------------------|----------------|--------------|
| **Total** | **$298,506.71** | **$298,506.71** |

## I.      Employee Compensation and Withholding Obligations.

### A.      Unpaid Compensation and Severance.

12.      In the ordinary course, the Debtor incurs obligations to its Employees, for, among other things, wages, salaries, overtime, and other obligations described herein (collectively, the "Employee Compensation").      The Debtor's historical average monthly gross Employee Compensation, including wages, salaries, tips, and related compensation, has been approximately $118,000.   As of the Petition Date, the Debtor estimates that it owes less than $70,496.01 on account of accrued and unpaid Employee Compensation earned by Employees prior to the Petition Date (the "Unpaid Compensation"), all of which will come due within the first 30 days of this Chapter 11 Case.   As described above, loss of the Unpaid Compensation that the Employees are owed could cause such Employees to experience financial hardship.   In light of the substantial benefit the Employees will continue to provide to the Debtor's estate, the Debtor wishes to avoid imposing such a hardship.

13.      Accordingly, by this Motion the Debtor seeks authority, but not direction, to pay their Employees any Unpaid Compensation in the ordinary course and consistent with past practice and to continue the Employee Compensation in the ordinary course.   For the avoidance of doubt, by this Motion the Debtor does not seek to pay Unpaid Compensation, if any, to any Employee in excess of the $17,150 priority wage cap imposed by section 507(a)(4) of the Bankruptcy Code.

14.      As mentioned above, on April 1, 2025, the Debtor recently terminated the Terminated Employees as part of a recent reduction-in-force.   Under state law, the Debtor was required to provide a certain time period for the Terminated Employees to consider their severance,

6

as well as cash-out Paid Time Off, among other things.  Accordingly, the Debtor issued checks to the Terminated Employees for severance and cashed-out Paid Time Off (defined herein) amounts, certain of which checks remain uncashed as of the Petition Date.  The Debtor requests authority to honor or re-issue pre-petition checks to Terminated Employees on behalf of severance or cashed-out Paid Time Off.  As of the Petition Date, there was $66,771.66 in checks issued to Terminated Employees for severance and Paid Time Off that remained uncashed.

**B.    Temporary Employee, Employment Agency and Independent Contractors**

15.    Prior to the Petition Date, the Debtor regularly utilized the services of Independent Contractors and the Temporary Employee. Independent Contractors and temporary employees are, or have been, used by the Debtor to provide a variety of services, including hazardous waste removal, safety and compliance, and legal services. The continued services of Independent Contractors and the Temporary Employee will be critical to the Debtor's business operations, as services provided by Independent Contractors and the Temporary Employee facilitate the Debtor's efficient use of the chapter 11 process while maintaining the ordinary course operations of the Debtor's business in an effort to maximize estate value. The total amount of monthly obligations with respect to Independent Contractors is approximately $19,000 on average in the aggregate (the "Independent Contractor Obligations"), and the total amount of monthly obligations with respect to the Temporary Employee (who is paid through an Employment Agency, which the Debtor pays directly) is approximately $5,000 (the "Employment Agency Obligations"). As of the Petition Date, the Debtor believes that Independent Contractor Obligations total $22,110.88 and it owes $7,895.05 to the Employment Agency for the Temporary Employee's compensation.

16.    As described above, loss of the Independent Contractor Obligations or Employment Agency Obligations to the Independent Contractors or Temporary Employee, respectively, could

cause such Contractor or the Temporary Employee to experience financial hardship. In light of the substantial benefit the Independent Contractors and Temporary Employee will continue to provide to the Debtor's estate, the Debtor wishes to avoid imposing such a hardship.

17.     Accordingly, by this Motion, the Debtor seeks authority, but not direction, to pay its current Independent Contractors and Temporary Employee any pre-petition amounts owed in the ordinary course and consistent with past practice and to continue the Independent Contractor Obligations and Employment Agency Obligations in the ordinary course—for the current Independent Contractors and the Temporary Employee and any other Independent Contractors or temporary employees that enter into contracts with the Debtor (or an Employment Agency) post-petition.

## C.     Withholding Obligations.

18.     During each applicable payroll period, the Debtor routinely deducts certain amounts from Employees' paychecks, such as garnishments, child support, and similar deductions, as well as other pre-tax and after-tax deductions payable pursuant to certain employee benefit plans discussed herein, such as an Employee's share of health care benefits and insurance premiums, 401(k) contributions, legally ordered deductions, and miscellaneous deductions (collectively, the "Deductions"), and forward such amounts to various third-party recipients.  In addition to the Deductions, certain federal and state laws require that the Debtor withholds certain amounts from Employees' gross pay related to federal, state, and local income taxes, as well as Social Security and Medicare taxes (collectively, the "Employee Payroll Taxes") for remittance to the appropriate federal, state, or local taxing authorities.  The Debtor must then match the Employee Payroll Taxes from its own funds and pay, based upon a percentage of gross payroll, additional amounts for federal and state unemployment insurance and Social Security and Medicare taxes (the "Employer

8

Payroll Taxes" and, together with the Employee Payroll Taxes, the "Payroll Taxes"). The Payroll Taxes are generally processed and forwarded to the appropriate federal, state, and local taxing authorities at the same time the Employees' payroll checks are disbursed.

19.     As of the Petition Date, the Debtor estimates that it will have unpaid Deductions and Payroll Taxes (together, the "Withholding Obligations") outstanding of approximately $78,365.52 all of which would come due within the first 30 days of this Chapter 11 Case. By this Motion, the Debtor seeks authority, but not direction, to pay in a manner consistent with historical practice any unpaid Withholding Obligations and to continue to honor the Withholding Obligations in the ordinary course during the administration of this Chapter 11 Case.

**D.     Payroll Processing.**

20.     The Debtor's payroll runs bi-weekly on every other Friday for dates of service provided for the two-week period ending on the immediately preceding Friday. The Debtor pays its payroll processor, Automatic Data Processing, Inc. ("ADP"), monthly, and ADP pulls the payroll funds approximately two days prior to the pay date from the appropriate Debtor account. ADP, as the payroll processor, issues checks and initiates direct deposit ACHs that are drawn on the Debtor's applicable payroll accounts on the date of payment. As of the Petition Date, the Debtor estimates it owes approximately $1,932.13 to ADP on account of payroll services for the upcoming month and retroactive administrative fees for prior months (the "Unpaid Payroll Processing Fees"), all of which will come due within the first 30 days of this Chapter 11 Case. Accordingly, the Debtor requests authority to pay the Unpaid Payroll Processing Fees and to continue to make all payroll processing payments on a postpetition basis in the ordinary course and consistent with its prepetition practices.

9

### D.    Reimbursable Expenses

21.    Prior to the Petition Date and in the ordinary course, the Debtor reimbursed Employees for approved expenses incurred on behalf of the Debtor in the scope of their employment (the "Reimbursable Expenses"), including, but not limited to, travel and meal expenses.  Employees who pay for their own Reimbursable Expenses up front apply for reimbursement of Reimbursable Expenses by submitting the expenses through an expense processor, Concur Technologies, Inc. ("Concur").  Once the Debtor has determined that the charges are for legitimate reimbursable business expenses (by approval of the submitting Employee's manager), the approved reimbursements are paid to the relevant Employee, through ADP, with the Employee's normal paycheck.

22.    Employees incur Reimbursable Expenses as business expenses on the Debtor's behalf and with the understanding that such expenses will be reimbursed.  The Debtor's inability to reimburse such expenses could impose hardship on such individuals, where such individuals otherwise incurred obligations for the Debtor's benefit.  As of the Petition Date, the Debtor believes that it does not owe any unpaid Reimbursable Expenses to Employees for the pre-petition period.  However, to avoid harming Employees who have or will incur Reimbursable Expenses and who may become personally liable for such expenses, the Debtor requests authority, but not direction, to continue to pay the Reimbursable Expenses in the ordinary course.

## II.    Employee Benefits Programs.

23.    The Debtor offers its Employees the ability to participate in a number of insurance and benefits programs, including, among other programs, medical, dental, and vision plans, life insurance, accidental death and dismemberment insurance, disability benefits, employee assistance

WBD (US) 4904-5028-5620v3

programs, a retirement plan, and other employee benefit plans as described below (collectively, the "Employee Benefits Programs").

24.     The failure to continue the Employee Benefits Programs could cause Employees to experience severe hardship.  In light of the substantial benefit the Employees have provided and will continue to provide to the Debtor's estate, the Debtor wishes to avoid imposing such a hardship.  Accordingly, by this Motion, the Debtor seeks authority, but not direction, to: (a) pay any unpaid amounts due with respect to the Employee Benefits Programs; and (b) continue to provide Employee Benefits Programs in the ordinary course during the administration of this Chapter 11 Case.  As of the Petition Date, the Debtor estimates that it owes approximately $50,351.18 on account of the Employee Benefits Programs, all of which will come due within the first 30 days of this Chapter 11 Case.  The Employee Benefits Programs are described in greater detail below.

**A.      Health Benefit Plans.**

25.     The Debtor offers its Employees the opportunity to participate in a number of health benefit plans, including medical, dental, and vision plans (collectively, the "Health Benefit Plans").  Specifically, the Debtor provides the following:

- Healthcare Plan:  The Debtor offers a medical healthcare insurance plan through United Healthcare (the "Healthcare Plan"). The Healthcare Plan is not a self-insured plan. Under the Healthcare Plan, the Debtor's monthly premium averages $49,834 and the Employees' aggregate monthly premiums average $5,166. As of the Petition Date, the Debtor owes approximately $31,434.46 on amounts on account of the Healthcare Plan.

- Dental and Vision Plan:  The Debtor provides dental and vision coverage to Employees (the "Dental and Vision Plan") through Aetna. The Dental and Vision Plan is not a self-insured plan. Under the Dental and Vision Plan, the Debtor's monthly premium averages $3,060 and the Employees' aggregate monthly premiums average

11

$440. As of the Petition Date, the Debtor owes approximately $4,022.32 on account of the Dental and Vision Plan.

- Flexible Spending Accounts: The Debtor provides flexible spending accounts to Employees (the "Flexible Spending Accounts"). The Debtor pays a monthly administration fee related to the Flexible Spending Accounts. As of the Petition Date, the Debtor owes approximately $181 on account of the Flexible Spending Accounts.

- COBRA Plan: In the ordinary course of business, the Debtor maintains Continuation Health Coverage (26 U.S.C. § 4980B) ("COBRA") for qualifying Employees and their qualifying dependents who incur a COBRA qualifying event or loss of coverage in connection with a self-insured benefit plan (the "COBRA Plan"). As of the Petition Date, there may be one participant in the Debtor's COBRA Plan. The Debtor pays a monthly fee for the administration of its COBRA Plan.

**B.      Workers' Compensation and Other Insurance Programs.**

      **1.      Workers' Compensation.**

26.     The Debtor provides workers' compensation insurance for its Employees at the statutorily required level for California as the state in which it has Employees (collectively, and as described herein, the "Workers' Compensation Program"). Chubb Insurance ("Chubb") currently provides these benefits to the Debtor's Employees pursuant to certain workers' compensation insurance policies (the "Workers' Compensation Policy"). The Debtor pays its insurance broker, Lockton Insurance Brokers, LLC ("Lockton"), for the premium owed on its Workers' Compensation Policy provided by Chubb. The annual premium for the Debtor's Workers' Compensation Policy is $60,325, paid on a quarterly basis. The Workers' Compensation Policy also funds individual losses up to a deductible of $1,000,000. As of the Petition Date, the Debtor estimates that it owes approximately $11,319.60 on account of the Workers' Compensation Program.

12

27.     The Debtor must continue the claim assessment, determination, adjudication, and payment pursuant to the Workers' Compensation Program, without regard to whether such liabilities are outstanding before the Petition Date, to ensure that the Debtor complies with applicable workers' compensation laws and requirements.[4]  Thus, the Debtor requests that the automatic stay be modified to allow them to continue to assess, determine and adjudicate unpaid claims in the ordinary course of the Debtor's business.  In addition, to the extent any employees assert claims under the Workers' Compensation Program, the Debtor requests that the Court modify the automatic stay under Bankruptcy Code section 362 to permit the employees to proceed with their claims under the Workers' Compensation Program and to allow the Debtor or the Workers' Compensation Program administrator to administer, handle, defend, settle and/or pay a claim covered by the Workers' Compensation Program and the costs related thereto.   For avoidance of doubt, this requested modification of the automatic stay described in this paragraph pertains solely to claims under the Workers' Compensation Program, and not to other claims made under different insurance policies.

### 2.     Life Insurance, Accidental Death and Dismemberment Insurance, Disability Benefits, and Related Programs.

28.     The Debtor offers Employees with primary and voluntary life insurance, accidental death and dismemberment insurance, short-term and long-term disability benefits, through various policies (collectively, the "Life, AD&D and Disability Plans") from Principal Life Insurance Company ("Principal").  As of the Petition Date, the Debtor believes it may owe $2,949.80 on

---

[4] Certain of the Debtor's Workers' Compensation Programs may change postpetition in the ordinary course due to changes in applicable laws and regulations and the Debtor's ability to meet requirements thereunder.  By this Motion, the Debtor requests authority to continue the Workers' Compensation Programs postpetition, including making any changes to current policies and practices that become necessary.

WBD (US) 4904-5028-5620v3

account of the Life, AD&D and Disability Plans (including employer contributions, employee contributions, and administrative costs).

### C.    Retirement Plans.

29.    As of the Petition Date, the Debtor maintains a retirement savings plan for the benefit of its Employees that satisfies the requirements of section 401(k) of the Internal Revenue Code (the "401(k) Plan"). The 401(k) Plan is managed by Fidelity Investments Institutional Operations ("Fidelity") and allows for automatic pre-tax salary deductions of eligible compensation up to the limits set forth by the Internal Revenue Code. The Debtor does not match the Employees' 401(k) contributions. The Debtor remits approximately $12610.38 on a bi-weekly basis on account of Employee contributions. As of the Petition Date, the Debtor owes Fidelity $625 for a quarterly administration fee associated with the 401(k) Plan. The Debtor requests authority to pay outstanding quarterly fees to Fidelity in the amount of $625, maintain the 401(k) Plan in the ordinary course of business, and process the Employee contributions to the 401(k) Plan during the pendency of this Chapter 11 Case.

### D.    Paid Time Off.

30.    The Debtor provides vacation time to its Employees as a paid time off benefit (the "Paid Time Off"). The amount of Paid Time Off available to a particular Employee and the rate at which Paid Time Off accrues are generally determined by the Employee's length of employment and employment level. When an Employee elects to take Paid Time Off, that Employee is paid his or her regular rate. In accordance with applicable state law, Employees are entitled to a cash payment for unused Paid Time Off in the event that such Employee is terminated from the Debtor's employment. The Debtor estimates that, as of the Petition Date, approximately $307,183.10 in Paid Time Off has been earned by Employees.

WBD (US) 4904-5028-5620v3

31.     By this Motion, the Debtor seeks authority, but not direction, to pay any "cash out" amounts due with respect to earned but unused Paid Time Off for the Terminated Employees (as well as any future terminated Employees during the pendency of this case) and to continue the Paid Time Off policies in the ordinary course. For the avoidance of doubt, the Debtor does not seek to pay Paid Time Off in combination with wages and other benefits to any Employee in excess of the $17,150 priority cap imposed by Bankruptcy Code section 507(a)(4).

**E.     Other Benefit Programs.**

32.     In addition to the foregoing, the Debtor offers qualified Employees the opportunity to participate in a range of general, ancillary benefits (the "Other Benefit Programs"), including, but not limited to, wellness days,[5] travel insurance, pet insurance, and an employee assistance program.

33.     The aggregate cost of the Other Benefit Programs is *de minimis*.  Nevertheless, the Debtor requests authority to continue to honor any amounts that come due on account of the Other Benefit Programs in the ordinary course of business.

## Basis for Relief

**I.     Authority to Honor the Employee Compensation and Benefits Obligations Is Warranted Under the Facts of This Chapter 11 Case.**

34.     Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Under section 363(b), courts require only that the debtor "show that a sound business purpose justifies such actions." *In re Montgomery Ward*

---

[5] The Debtor's wellness days policy allows Employees to use up to five days of paid wellness time off when an Employee or their family member is sick.  Wellness days are separate from the Debtor's Paid Time Off policy.

15

*Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (requiring that the debtor show a "sound business purpose" to justify its actions under section 363 of the Bankruptcy Code) (internal citations omitted); *see also In re Phx. Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987) (requiring a "good business reason" for a sale under section 363 of the Bankruptcy Code); *In re Adelphia Commc'ns Corp.*, No. 02-41729 (REG), 2003 WL 22316543, at *30 (Bankr. S.D.N.Y. Mar. 4, 2003) (requiring a "good business reason" for disposition of assets outside of the ordinary course in bankruptcy); *In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983) (same). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

35.    Further, section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court, empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The Court may use its power under section 105(a) to authorize payment of the Employee Compensation and Benefits under the "necessity of payment" rule (also referred to as the "doctrine of necessity"). *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992); *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (explaining that a court may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Motor Coach Indus. Int'l, Inc.*, No. 08-12136, 2009 WL 330993, at *3 (D. Del. Feb. 10, 2009) (denying stay pending appeal

16

on grounds that there is no serious basis to challenge doctrine of necessity in the Third Circuit); *In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding that necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid").

36.     The Debtor believes that enterprise value will be materially impaired by postpetition workforce instability.  The relief requested in this Motion is, therefore, a necessary element of the Debtor's efforts to preserve value for its stakeholders.  Absent approval of the relief requested in this Motion, key employees may face significant financial hardship and other risks and could be forced to seek alternative employment opportunities.  Ultimately, the maximization of value of the Debtor's estate is inextricably tied to its workforce.  The Debtor cannot readily replace its human capital without significant efforts—which may not be successful given the overhang of this Chapter 11 Case—and the Employees are critical to the Debtor's ability to continue operations and otherwise administer its Chapter 11 Case.  Paying the Employee Compensation and Benefits is thus necessary for the Debtor to avoid unnecessary recruitment and related costs, and to avoid certain operating risks related to the administration of this Chapter 11 Case.  Accordingly, payment of the Employee Compensation and Benefits is warranted under section 363(b) and the doctrine of necessity.

37.     Further, certain of the Employee Compensation and Benefits are entitled to priority under section 507(a)(4) and 507(a)(5) of the Bankruptcy Code.  Thus, granting the relief sought in this Motion is likely to only affect the timing of such payments to Employees and should not negatively affect recoveries for general unsecured creditors.

## II.    Payment of Certain Employee Compensation and Benefits Obligations Is Required by Law.

38.    As set forth herein, the Debtor also seeks authority to pay Deductions and Payroll Taxes to the appropriate entities and taxing authorities.  These amounts generally represent Employee earnings that taxing authorities, Employees, and judicial authorities have designated for deduction from Employees' paychecks.  Indeed, certain Deductions, including certain Employee contributions to the Employee Compensation and Benefits programs and child support and alimony payments, are not property of the Debtor's estate because the Debtor has withheld such amounts from Employees' paychecks on the Employees' behalf.  *See* 11 U.S.C. § 541(b).  Further, federal and state laws require the Debtor to withhold certain tax payments from Employees' paychecks and to pay such amounts to the appropriate taxing authority.  *See* 26 U.S.C. §§ 6672 and 7501(a); *see also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95-97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes).  Because the Deductions and Payroll Taxes are not property of the Debtor' estate, the Debtor requests authority to transmit the Deductions and Payroll Taxes to the proper parties in the ordinary course.

39.    Similarly, state laws require the Debtor to maintain the Workers' Compensation Program.  If the Debtor fails to maintain the Workers' Compensation Program, state laws may prohibit the Debtor from operating in those states.  Payment of all amounts that may be owed under the Workers' Compensation Program, therefore, is crucial to the administration of this Chapter 11 Case.

18

III.    **A Limited Waiver of the Automatic Stay for Workers' Compensation Claims Is Appropriate Here.**

40.     Section 362(a) of the Bankruptcy Code operates to stay "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . . ." 11 U.S.C. § 362(a)(1).

41.     Section 362 of the Bankruptcy Code, however, permits a debtor or other parties in interest to request a modification or termination of the automatic stay for "cause." *Id.* at § 362(d)(1).  Cause exists here to modify the automatic stay to permit the Employees to proceed with workers' compensation claims in the appropriate judicial or administrative forum. Staying the workers' compensation claims could have a detrimental effect on the financial well-being and morale of the employees.

**Processing of Checks and
<u>Electronic Fund Transfers Should Be Authorized</u>**

42.     The Debtor has sufficient funds to pay the amounts described in this Motion during the Chapter 11 Case through and subject to the terms of the order approving debtor-in-possession financing and authorizing use of cash collateral.  In addition, under the Debtor's existing cash management system, the Debtor can readily identify checks or ACH and/or wire transfer requests as relating to an authorized payment in respect of the Employee Compensation and Benefit obligations.  Accordingly, the Debtor believes that checks or ACH and/or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently.  Therefore, the Debtor respectfully requests that the Court authorize and direct all applicable financial institutions,

19

when requested by the Debtor, to receive, process, honor, and pay any and all checks or ACH and/or wire transfer requests in respect of the relief requested in this Motion.

## **The Requirements of Bankruptcy Rule 6003 Are Satisfied**

43.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." For the reasons discussed above, authorizing the Debtor to pay the Employee Compensation and Benefits and granting the other relief requested herein is integral to the Debtor's ability to transition its operations into this Chapter 11 Case.  Failure to receive such authorization and other relief during the first 21 days of this Chapter 11 Case would severely disrupt the Debtor's ability to administer its estate at this critical juncture.  For the reasons discussed herein, the relief requested is necessary in order for the Debtor to preserve and maximize the value of the Debtor's estate for the benefit of all stakeholders.  Accordingly, the Debtor submits that it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## **Reservation of Rights**

44.     Nothing contained in this Motion or any actions taken by the Debtor pursuant to relief granted in the Orders is intended or should be construed as:  (a) an admission as to the validity of any particular claim against the Debtor; (b) a waiver of the Debtor's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtor's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtor that any liens (contractual,

common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtor expressly reserve its rights to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Orders is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtor's rights to subsequently dispute such claim.

## **Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

45.    To implement the foregoing successfully, the Debtor requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtor has established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## **Notice**

46.    The Debtor will provide notice of this Motion to: (a) the Office of the U.S. Trustee for the District of Delaware; (b) the holders of the 20 largest unsecured claims against the Debtor; (c) the subchapter V trustee (once appointed); (d) counsel to the DIP Lender; (e) the United States Attorney's Office for the District of Delaware; (f) the Internal Revenue Service; (g) the state attorneys general for all states in which the Debtor conducts business or has conducted business; (h) the Securities & Exchange Commission; (i) the Debtor's bank; and (j) any party that requests service pursuant to Bankruptcy Rule 2002. As the Motion is seeking "first day" relief, within two business days after the hearing on the Motion, the Debtor will serve copies of the Motion and any order entered respecting the Motion as required by Local Rule 9013-1(m)(iv). The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtor respectfully requests that the Court enter the Interim Order and
Final Order granting the relief requested herein and such other relief as the Court deems
appropriate under the circumstances.

Dated: April 15, 2025
      Wilmington, Delaware

**WOMBLE BOND DICKINSON (US) LLP**

*/s/ Morgan L. Patterson*
Matthew P. Ward (DE Bar No. 4471)
Morgan L. Patterson (DE Bar No. 5388)
Marcy J.  McLaughlin Smith (DE Bar No. 6184)
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone:  (302) 252-4320
Facsimile:   (302) 252-4330
Email:  matthew.ward@wbd-us.com
Email:  morgan.patterson@wbd-us.com
Email: marcy.smith@wbd-us.com

*Proposed Counsel to the Debtor*

22

# EXHIBIT A

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>VIRIDOS, INC.,[1]<br><br>Debtor. | Chapter 11<br>Subchapter V<br><br>Case No. 25-10697 (CTG)<br><br>**Re: D.I. ____** |

**INTERIM ORDER (I) AUTHORIZING,**
**BUT NOT DIRECTING, THE DEBTOR TO (A) PAY**
**PREPETITION EMPLOYEE AND INDEPENDENT CONTRACTOR WAGES,**
**SALARIES, AND OTHER COMPENSATION AND (B) CONTINUE**
**EMPLOYEE BENEFITS PROGRAMS, AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtor and debtor in possession (the "Debtor") for entry of an interim order (this "Interim Order"): (i) authorizing, but not directing, the Debtor to (a) pay prepetition wages, salaries, other compensation to Employees; (b) pay obligations to Independent Contractors; (c) honor pre-petition severance and cashed-out Paid Time Off checks issued to recently Terminated Employees; and (d) continue employee benefits programs in the ordinary course, including payment of certain prepetition obligations related thereto; and (ii) granting related relief; all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court being able to enter an interim order consistent with Article III of the United States Constitution; and this Court having found that

---

[1] The Debtor in this Chapter 11 Case and the last four digits of its U.S. taxpayer identification number is: Viridos, Inc. (3940). The Debtor's corporate headquarters is located at: 11149 N. Torrey Pines Road, La Jolla, CA 92037.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408

and 1409; and this Court having found that the Debtor's notice of the Motion and opportunity for

a hearing on the Motion were appropriate under the circumstances and no other notice need be

provided; and this Court having reviewed the Motion and having heard the statements in support

of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having

determined that the legal and factual bases set forth in the Motion and at the Hearing establish just

cause for the relief granted herein; and upon all of the proceedings had before this Court; and after

due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      The final hearing (the "Final Hearing") on the Motion shall be held on

[_____], 2025, at [____], prevailing Eastern Time.  Any objections or responses to entry of a

final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on

[_____], 2025, and shall be served on:  (i) the Debtor, Viridos, Inc., 11149 N. Torrey Pines

Rd., La Jolla, CA, Attn: Eric Moellering; (ii) proposed counsel to the Debtor, Womble Bond

Dickinson (US) LLP, 1313 North Market Street, Suite 1200, Wilmington, Delaware, 19801 Attn:

Morgan L. Patterson (morgan.patterson@wbd-us.com), and Marcy J. McLaughlin Smith

(marcy.smith@wbd-us.com); (iii) the Subchapter V Trustee; (iv) counsel to the DIP Lender,

Greenberg Traurig, LLP, One International Place, Suite 2000, Boston, MA, 02110 Attn: Jeffrey

M. Wolf (Jeffrey.Wolf@gtlaw.com); and (vi) the Office of the United States Trustee, 844 King

Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Timothy J. Fox

(Timothy.Fox@usdoj.gov).  In the event no objections to entry of a final order on the Motion are

timely received, this Court may enter such final order without need for the Final Hearing.

2

3.      The Debtor is authorized, but not directed, in its discretion and subject to the Approved Budget (as defined by the DIP Order), to continue the Employee Compensation and Benefits and to honor and pay, in the ordinary course and in accordance with the Debtor's prepetition policies and prepetition practices, any obligations on account of the Employee Compensation and Benefits, irrespective of whether such obligations arose prepetition or postpetition, including payments due to or on account of, as applicable, the Employee Compensation, the Unpaid Compensation, the Employment Agency Obligations, Independent Contractor Obligations, the Withholding Obligations, the Payroll Processing Fees, the Payroll Taxes, the Employee Benefit Programs (including but not limited to the Health Benefit Plans, the Workers' Compensation Program, the Life, AD&D and Disability Plans, the 401(k) Plan, and Paid Time Off); *provided that* no payments on account of Unpaid Compensation or Paid Time Off shall exceed $17,150 in the aggregate per individual in accordance with sections 507(a)(4) and (a)(5) of the Bankruptcy Code.

4.      Notwithstanding anything to the contrary herein, pending entry of the Final Order, the Debtor is authorized, but not directed, in its discretion and subject to the Approved Budget (as defined in the DIP Order), to pay, remit, or reimburse, as applicable, not more than: (a) $70,496.01 on account of prepetition Unpaid Compensation; (b) $22,110.88 on account of prepetition Independent Contractor Obligations; (c) $8,479.33 on account of prepetition Employment Agency Obligations; (d) $78,365.52 on account of prepetition Withholding Obligations; (e) $1,932.13 on account of prepetition Payroll Processing Fees; (f) $66,771.66 on account of prepetition severance and Paid Time Off to Terminated Employees; and (g) $50,351.18 on account of the prepetition Employee Benefits Programs.

3

5.      Pursuant to section 362(d) of the Bankruptcy Code, Employees are authorized to proceed with their claims under the Workers' Compensation Program in the appropriate judicial or administrative forum and the Debtor is authorized, but not directed, to continue the Workers' Compensation Program and pay all prepetition amounts relating thereto in the ordinary course. This modification of the automatic stay pertains solely to claims under the Workers' Compensation Program.

6.      The Debtor is authorized, but not directed, to forward any unpaid amounts on account of Deductions or Payroll Taxes to the appropriate third-party recipients or taxing authorities in accordance with the Debtor's prepetition policies and practices.

7.      The Debtor is authorized, but not directed, to pay costs and expenses incidental to payment of the Employee Compensation and Benefits obligations, including all administrative and processing costs and payments to outside professionals.

8.      Nothing in the Motion or the Interim Order shall be deemed to (i) authorize the payment of any amounts that are subject to Bankruptcy Code section 503(c) or (ii) violate or permit a violation of Bankruptcy Code section 503(c).

9.      Nothing contained herein is intended or should be construed to create an administrative priority claim on account of the Employee Compensation and Benefits obligations.

10.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtor's designation of any particular check or electronic payment request as approved by this Interim Order.

4

11.     Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed:  (a) an admission as to the validity of any prepetition claim against the Debtor; (b) a waiver of the Debtor's right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtor's rights or the rights of any other Person under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtor that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtor expressly reserves its right to contest the extent, validity, or perfection or seek avoidance of all such liens.

12.     The Debtor is authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of this Chapter 11 Case with respect to prepetition amounts owed in connection with any prepetition amounts owed to its Employees.

13.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

14.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) are satisfied by such notice.

15.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

16.     The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

WBD (US) 4904-5028-5620v3

17.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

WBD (US) 4904-5028-5620v3

## **EXHIBIT B**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| | Subchapter V |
| VIRIDOS, INC.,[1] | |
| | Case No. 25-10697 (CTG) |
| Debtor. | |
| | **Re: D.I. ___** |

**FINAL ORDER (I) AUTHORIZING,
BUT NOT DIRECTING, THE DEBTOR TO (A) PAY
PREPETITION EMPLOYEE AND INDEPENDENT CONTRACTOR
WAGES, SALARIES, AND OTHER COMPENSATION, AND (B) CONTINUE
EMPLOYEE BENEFITS PROGRAMS AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtor and debtor in possession (the "Debtor") for entry of a final order (this "Final Order"): (i) authorizing, but not directing, the Debtor to (a) pay prepetition wages, salaries, other compensation to Employees; (b) pay obligations to Independent Contractors; (c) honor pre-petition severance and cashed-out Paid Time Off checks issued to recently Terminated Employees; and (d) continue employee benefits programs in the ordinary course, including payment of certain prepetition obligations related thereto; and (ii) granting related relief; all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court being able to enter a final order consistent with Article III of the United States Constitution, the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that

---

[1] The Debtor in this Chapter 11 Case and the last four digits of its U.S. taxpayer identification number is: Viridos, Inc. (3940). The Debtor's corporate headquarters is located at: 11149 N. Torrey Pines Road, La Jolla, CA 92037.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtor's notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is GRANTED on a final basis as set forth herein.

2.      The Debtor is authorized, but not directed, in its discretion and subject to the Approved Budget (as defined in the DIP Order), to continue the Employee Compensation and Benefits, and to honor and pay, in the ordinary course and in accordance with the Debtor's prepetition policies and prepetition practices, any obligations on account of the Employee Compensation and Benefits, irrespective of whether such obligations arose prepetition or postpetition, including payments due to or on account of, as applicable, the Employee Compensation, the Unpaid Compensation, the Employment Agency Obligations, the Independent Contractor Obligations, the Withholding Obligations, the Payroll Processing Fees, the Payroll Taxes, the Employee Benefit Programs (including but not limited to the Health Benefit Plans, the Workers' Compensation Program, the Life, AD&D, and Disability Plans, the 401(k) Plan, and Paid Time Off); *provided that* no payments on account of Unpaid Compensation or Paid Time Off shall exceed $17,150 in the aggregate per individual in accordance with sections 507(a)(4) and (a)(5) of the Bankruptcy Code.

2

3.      Notwithstanding anything to the contrary herein, the Debtor is authorized, but not directed, in its discretion and subject to the Approved Budget (as defined in the DIP Order), to pay, remit, or reimburse, as applicable, not more than: (a) $70,496.01 on account of prepetition Unpaid Compensation; (b) $22,110.88 on account of prepetition Independent Contractor Obligations; (c) $8,479.33 on account of prepetition Employment Agency Obligations; (d) $78,365.52 on account of prepetition Withholding Obligations; (e) $1,932.13 on account of prepetition Payroll Processing Fees; (f) $66,771.66 on account of prepetition severance and Paid Time Off to Terminated Employees; and (g) $50,351.18 on account of the prepetition Employee Benefits Programs.

4.      Pursuant to section 362(d) of the Bankruptcy Code, employees are authorized to proceed with their claims under the Workers' Compensation Program in the appropriate judicial or administrative forum and the Debtor is authorized, but not directed, to continue the Workers' Compensation Program and pay all prepetition amounts relating thereto in the ordinary course. This modification of the automatic stay pertains solely to claims under the Workers' Compensation Program.

5.      The Debtor is authorized, but not directed, to forward any unpaid amounts on account of Deductions or Payroll Taxes to the appropriate third-party recipients or taxing authorities in accordance with the Debtor's prepetition policies and practices.

6.      The Debtor is authorized, but not directed, to pay costs and expenses incidental to payment of the Employee Compensation and Benefits obligations, including all administrative and processing costs and payments to outside professionals.

7.      Nothing contained herein is intended or should be construed to create an administrative priority claim on account of the Employee Compensation and Benefits obligations.

8.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtor's designation of any particular check or electronic payment request as approved by this Final Order.

9.      Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed:  (a) an admission as to the validity of any prepetition claim against the Debtor; (b) a waiver of the Debtor's right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtor's rights or the rights of any other Person under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtor that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtor expressly reserves its right to contest the extent, validity, or perfection or seek avoidance of all such liens.

10.     The Debtor is authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of this Chapter 11 Case with respect to prepetition amounts owed in connection with any prepetition amounts owed to its Employees.

11.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

WBD (US) 4904-5028-5620v3

12.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) are satisfied by such notice.

13.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

14.     The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

15.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

WBD (US) 4904-5028-5620v3