### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11<br>Subchapter V |
| VIRIDOS, INC.,[1] | Case No. 25-10697 (CTG) |
| Debtor. | |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTOR TO (A) CONTINUE TO OPERATE ITS CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN EXISTING BUSINESS FORMS, AND (D) GRANTING RELATED RELIEF**

Viridos, Inc., as debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor"),[2] respectfully states the following in support of this motion (the "Motion"):

### Relief Requested

1.      The Debtor seeks entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order"): authorizing the Debtor to (a) continue to operate its cash management system substantially as illustrated on **Exhibit 1** annexed to **Exhibit A** attached hereto (the "Cash Management System"), (b) honor certain prepetition obligations related thereto, (c) maintain existing business forms, and (d) granting related relief.

---

[1]  The Debtor in this Chapter 11 Case and the last four digits of its U.S. taxpayer identification number is: Viridos, Inc. (3940).  The Debtor's corporate headquarters is located at: 11149 N. Torrey Pines Road, La Jolla, CA 92037.

[2]  A detailed description of the Debtor and its business, and the facts and circumstances supporting this Motion and the Debtor's chapter 11 case, are set forth in greater detail in the *Declaration of Eric Moellering in Support of Debtor's First Day Motions and Applications* (the "First Day Declaration"), filed contemporaneously with the Debtor's voluntary petition for relief filed under chapter 11 of title 11 of the Bankruptcy Code on the Petition Date.

**Jurisdiction and Venue**

2.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  The Debtor confirms its consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105, 345, and 363 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rules 2015-1 and 9013-1(m).

**Background**

5.      On April 14, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") as a debtor defined in Bankruptcy Code section 1182(1), and the Debtor elected to proceed under Subchapter V of chapter 11 of the Bankruptcy Code pursuant to the Small Business Debtor Reorganization Act, as amended (the "SBRA").

6.      Information about the Debtor's business and the events leading to the commencement of this Case can be found in the First Day Declaration, filed contemporaneously with the Debtor's voluntary petition for relief, which is incorporated herein by reference.

## The Cash Management System

### I.    Overview

7.    The Cash Management System is similar to the cash management systems used by other comparably sized companies to manage cash flow.  The Debtor uses its Cash Management System in the ordinary course to transfer and distribute funds and to facilitate cash monitoring, forecasting, and reporting.  The Debtor's financial personnel manage the Cash Management System from the Debtor's headquarters in San Diego, California and implement cash management controls for entering, processing, and releasing funds.  Additionally, the Debtor's corporate accounting personnel regularly reconcile the Debtor's books and records to ensure that all transfers are accounted for properly.

8.    The Cash Management System facilitates the timely and efficient collection, management, and disbursement of funds.  The Debtor estimates that total disbursements will average approximately $1 million per month during this chapter 11 case.  Because of the disruption that would result if the Debtor were forced to close its existing bank accounts, it is critical that the existing Cash Management System remain in place.

### II.    The Cash Management System

9.    The Cash Management System is comprised of seven (7) bank accounts and one (1) securities account (the "Bank Accounts"), each of which is identified on **Exhibit 2** annexed to **Exhibit A** attached hereto.[3]  The Bank Accounts are held at Bank of America and Merrill Lynch (A Bank of America Company) (the "Bank").  As further illustrated on **Exhibit 1** annexed to **Exhibit A** attached hereto, the Cash Management System is based around (i) a concentration

---

[3] While, as of the Petition Date, the Cash Management System includes the 8 Bank Accounts, in the ordinary course, the Debtor may close existing accounts or open new accounts.

account (the "Concentration Account"); (ii) an accounts payable operating account (the "Disbursement Account"); (iii) a payroll account ("Payroll Account"); (iv) three (3) brokerage/investment account ("Investment Accounts"); (v) an account holding cash collateral for the Bank of America creditor cards ("Credit Card Collateral Account") at the Bank.

### A.    Collection and Disbursement Process

10.    Receipts are deposited into the Concentration Account where the funds remain. Cash is manually swept from the Concentration Account to the Disbursement Account on an as-needed basis.  Periodically, the Debtor makes disbursements in the ordinary course of business via ACH/wire transfer or check out of the Disbursement Account as necessary. The Debtor proposes to continue using the Bank Accounts after the Petition Date, subject to its right to close the accounts in its discretion.

11.    The following chart summarizes the roles of the Bank Accounts:

| Account | Account Description |
|---|---|
| Concentration Account – Bank of America (-3707) | This account operates as the aggregator of the Debtor's deposits.  Funds are manually transferred to the Disbursement Account on an as-needed basis. |
| Disbursement Account – Bank of America (-3726) | This account receives funds from the Disbursement Account to fund the general operating expenses of the Debtor. |
| Payroll Account – Bank of America (-3745) | This account receives funds from the Concentration Account to fund payroll on a bi-weekly basis. |
| Investment Accounts – Bank of America (-6857; -1T00) Merrill Lynch (-2319; Equity Account) | These accounts were utilized to hold certain investments which the Debtor no longer holds. The Debtor intends to close these accounts in the coming weeks. |
| Credit Card Cash Collateral Account – Bank of America (-8520) | This account holds funds that serve as collateral for Bank of America credit cards utilized by the Debtor for operating costs. |

## III.    Compliance with U.S. Trustee Guidelines

12.    The Debtor understands that the Bank is designated as an authorized depository by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), pursuant

to the Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees (the "U.S. Trustee Guidelines").

**IV.    Bank Fees**

13.    In the ordinary course, the Bank charges, and the Debtor pays, honors, or allows the deduction from the appropriate account, certain service charges and other fees, costs, and expenses (collectively, the "Bank Fees").  Historically, the Debtor pays monthly Bank Fees on an average of $2,000 per month.  To maintain the integrity of its Cash Management System, the Debtor requests authority to pay any prepetition Bank Fees for prepetition transactions that are charged postpetition and to continue to pay the Bank Fees in the ordinary course postpetition.  The Debtor also requests that the Bank be authorized to charge-back returned items to the Bank Accounts, irrespective of whether the applicable sale transaction occurred before, on, or subsequent to the Petition Date, in the ordinary course.

**V.    Business Forms**

14.    As part of its Cash Management System, the Debtor utilizes various preprinted business forms (the "Business Forms") in the ordinary course.  To minimize expenses to its estate and avoid confusion during the pendency of this chapter 11 case, the Debtor requests that the Court authorize the Debtor's continued use of all existing preprinted correspondence and business forms (including, without limitation, letterhead and preprinted checks) as such forms were in existence immediately before the Petition Date, without reference to the Debtor's status as debtor in possession, rather than requiring the Debtor to incur the expense and delay of ordering entirely new business forms.  If the Debtor needs to order additional business forms postpetition, the Debtor will include the required debtor-in-possession designations.

**Basis for Relief**

I.     **Maintaining the Existing Cash Management System Is Essential to Maximizing the Value of the Debtor's Estate**

15.     The U.S. Trustee Guidelines require debtors in possession to, among other things: (a) establish one debtor-in-possession bank account for all estate monies required for the payment of taxes, including payroll taxes; (b) close all existing bank accounts and open new debtor-in-possession accounts; (c) maintain a separate debtor-in-possession account for cash collateral; and (d) obtain checks that bear the designation "debtor in possession" and reference the bankruptcy case number and type of account on such checks.  These requirements are designed to provide a clear line of demarcation between prepetition and postpetition claims and payments and help protect against the inadvertent payment of prepetition claims by preventing banks from honoring checks drawn before the Petition Date.

16.     Considering, however, the cash management system that the Debtor has in place for the transfer and distribution of funds, which ties into the Debtor's existing corporate accounting and cash forecasting reporting, enforcement of this provision of the U.S. Trustee Guidelines during this chapter 11 case would disrupt the Debtor's ability to efficiently administer its chapter 11 case. Accordingly, the Debtor respectfully requests that the Court allow it to operate each of the Bank Accounts as they were maintained in the ordinary course before the Petition Date.

17.     Continuation of the Cash Management System is permitted pursuant to section 363(c)(1) of the Bankruptcy Code, which authorizes the debtor in possession to "use property of the estate in the ordinary course without notice or a hearing."  Bankruptcy Courts routinely treat requests for authority to continue utilizing existing cash management systems as a relatively "simple matter."  *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987).  Additionally, courts in this district have noted that an integrated cash management system

6

"allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993). The United States Court of Appeals for the Third Circuit has agreed, emphasizing that requiring a debtor to maintain separate accounts "would be a huge administrative burden and economically inefficient." *Columbia Gas*, 997 F.2d at 1061; *see also In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995) (noting that maintaining an existing cash management system allows debtors "to administer more efficiently and effectively its financial operations and assets").

## II.    Maintaining the Existing Cash Management System Will Not Harm Parties in Interest

18.    The Debtor's continued use of its Cash Management System will facilitate the Debtor's transition into chapter 11 by, among other things, avoiding administrative inefficiencies, expenses, and distraction associated with disrupting this system and minimizing delays in the payment of postpetition obligations. The Debtor respectfully submits that parties in interest will not be harmed by the Debtor's maintenance of its existing Cash Management System, including maintenance of the Bank Accounts, because the Debtor has implemented appropriate mechanisms to ensure that unauthorized payments will not be made on account of obligations incurred before the Petition Date.

19.    Specifically, with the assistance of their advisors, the Debtor has implemented internal control procedures that prohibit payments on account of prepetition debts without the prior approval of the Debtor's treasury department. In light of such protective measures, the Debtor submits that maintaining the Cash Management System is in the best interests of its estate and creditors.

**III.     Authorizing the Debtor to Continue Using Debit and Wire Is Warranted**

20.     The Debtor requests that the Court grant further relief from the U.S. Trustee Guidelines to the extent they require the Debtor to make all disbursements by check. In particular, the U.S. Trustee Guidelines require that all receipts and all disbursements of estate funds must be made by check with a notation representing the reason for the disbursement.  If the Debtor's ability to conduct transactions by debit, wire or other similar methods is impaired, the Debtor's day-to-day activities may be unnecessarily disrupted, and its estate will incur additional costs.

**IV.     Authorizing the Bank to Continue to Maintain, Service, and Administer the Bank Accounts in the Ordinary Course Is Warranted**

21.     The Debtor respectfully requests that the Court authorize the Bank continue to maintain, service, and administer the Bank Accounts as accounts of the Debtor as debtor in possession, without interruption and in the ordinary course.  In this regard, the Bank should be authorized to receive, process, honor, and pay any and all checks and other instructions and drafts payable through, drawn, or directed on such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto; *provided that* any check, draft, or other notification that the Debtor advises the Bank to have been drawn, issued, or otherwise presented before the Petition Date may be honored by the Bank only to the extent authorized by order of the Court.

22.     The Debtor further requests that the Court authorize the Bank to accept and honor all representations from the Debtor as to which checks, drafts or wires should be honored or dishonored consistent with any order of the Court and governing law, whether such checks, drafts or wires are dated before or subsequent to the Petition Date.  The Debtor also requests that, to the extent the Bank honors a prepetition check or other item drawn on any account either:  (a) at the

direction of the Debtor; (b) in a good-faith belief that the Court has authorized such prepetition check or item to be honored; or (c) as a result of an innocent mistake made despite implementation of customary item handling procedures, the Bank will not be deemed to be liable to the Debtor or to its estate on account of such prepetition check or other item honored postpetition. The Debtor respectfully submits that such relief is reasonable and appropriate because the Banks is not in a position to independently verify or audit whether a particular item may be paid in accordance with a Court order or otherwise.

23.     Moreover, the Debtor requests that the Court authorize the Debtor to pay any prepetition Bank Fees for prepetition transactions that are charged postpetition, and authorize the Bank to: (a) continue to charge the Debtor the Bank Fees; and (b) charge-back returned items to the Bank Accounts, whether such items are dated before, on, or subsequent to the Petition Date, in the ordinary course.

24.     Courts in this district have regularly waived the U.S. Trustee Guidelines on the grounds that they may be potentially disruptive to a debtor's postpetition business operations and restructuring efforts. *See*, *e.g.*, *In re Big Lots, Inc.*, Case No. 24-11967 (JKS) (Bankr. D. Del. Sept. 10, 2024) (authorizing debtors continued use of existing cash management system and bank accounts); *In re First Mode Holdings, Inc.*, Case No. 24-12794 (KBO) (Bankr. D. Del. Dec. 17, 2024) (same); *In re Franchise Group, Inc.*, Case No. 24-12480 (JTD) (Bankr. D. Del. Nov. 6, 2024); *In re Joann Inc.*, Case No. 24-10418 (CTG) (Bankr. D. Del. Mar. 19, 2024) (same).

**V.     The Court Should Authorize the Debtor to Continue Using Its Existing Business Forms**

25.     To avoid disruption of the Cash Management System and unnecessary expense, pursuant to Local Rule 2015-1(a), the Debtor requests authorization for the continued use of existing business forms (including, without limitation, preprinted checks) substantially in the form

existing immediately before the Petition Date, without reference to its status as debtor in possession. The Debtor submits that parties in interest will not be prejudiced if the Debtor is authorized to continue to use its business forms substantially in the forms existing immediately before the Petition Date. Such parties will undoubtedly be aware of the Debtor's status as debtor in possession and, thus, changing business forms is unnecessary and would be unduly burdensome. In accordance with Local Rule 2015-1(a), once the Debtor has exhausted its existing supply of business forms, the Debtor will reorder business forms with the designation "Debtor in Possession" and the corresponding bankruptcy number on all such forms (including checks).

26.     In other chapter 11 cases, courts in this district have allowed debtors to use their prepetition business forms without the "debtor in possession" label. *See*, *e.g. In re Big Lots, Inc.*, Case No. 24-11967 (JKS) (Bankr. D. Del. Sept. 10, 2024); *In re First Mode Holdings, Inc.*, Case No. 24-12794 (KBO) (Bankr. D. Del. Dec. 17, 2024) (same); *In re Franchise Group, Inc.*, Case No. 24-12480 (JTD) (Bankr. D. Del. Nov. 6, 2024); *In re Joann Inc.*, Case No.  24-10418 (CTG) (Bankr. D. Del. Mar. 19, 2024) (same).

**<u>The Requirements of Bankruptcy Rule 6003(b) Are Satisfied</u>**

27.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." For the reasons discussed above, authorizing the Debtor to maintain its Cash Management System and granting the other relief requested herein is integral to the Debtor's ability to transition its operations into this chapter 11 case. Failure to receive such authorization and other relief during the first 21 days of this chapter 11 case would severely disrupt the Debtor's ability to administer its estate at this critical juncture. For the reasons discussed herein, the relief requested is necessary in order for the Debtor to preserve and maximize the value of the Debtor's estates for the benefit of all stakeholders. Accordingly, the Debtor submits that it has satisfied the "immediate and

Case 25-10697-CTG    Doc 11    Filed 04/15/25    Page 11 of 29

irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

### Reservation of Rights

28.     Nothing contained in this Motion or any actions taken by the Debtor pursuant to relief granted in the Interim Order and Final Order is intended or should be construed as:  (a) an admission as to the validity of any particular claim against the Debtor; (b) a waiver of the Debtor's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtor's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtor that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtor expressly reserves its right to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtor's rights to subsequently dispute such claim.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

29.     To implement the foregoing successfully, the Debtor requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtor has established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Notice

30.     The Debtor will provide notice of this Motion to: (a) the Office of the U.S. Trustee for the District of Delaware; (b) the holders of the 20 largest unsecured claims against the Debtor;

(c) counsel to the DIP Lender; (d) the subchapter V trustee (once appointed); (e) the United States Attorney's Office for the District of Delaware; (f) the Internal Revenue Service; (g) the state attorneys general for all states in which the Debtor conducts business; (h) the Securities & Exchange Commission; (i) the Debtor's Bank; and (j) any party that requests service pursuant to Bankruptcy Rule 2002.  As the Motion is seeking "first day" relief, within two business days after the hearing on the Motion, the Debtor will serve copies of the Motion and any order entered respecting the Motion as required by Local Rule 9013-1(m)(iv).  The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtor respectfully requests that the Court enter the Interim Order and Final Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: April 15, 2025
       Wilmington, Delaware

**WOMBLE BOND DICKINSON (US) LLP**

*/s/ Morgan L. Patterson*
Matthew P. Ward (DE Bar No. 4471)
Morgan L. Patterson (DE Bar No. 5388)
Marcy J. McLaughlin Smith (DE Bar No. 6184)
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
Email: matthew.ward@wbd-us.com
Email: morgan.patterson@wbd-us.com
Email: marcy.smith@wbd-us.com

*Proposed Counsel to the Debtor*

**<u>EXHIBIT A</u>**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| | Subchapter V |
| VIRIDOS, INC.,[1] | Case No. 25-10697 (CTG) |
| Debtor. | |

**INTERIM ORDER AUTHORIZING THE DEBTOR TO (A) CONTINUE TO OPERATE ITS CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN EXISTING BUSINESS FORMS, AND GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtor and debtor in possession (the "Debtor") for entry of an interim order (this "Interim Order"): (i) authorizing the Debtor to (a) continue to operate the Cash Management System, as defined in the Motion, (b) honor certain prepetition obligations related thereto, and (c) maintain existing business forms; and (ii) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtor's notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and

---

[1]  The Debtor in this Chapter 11 Case and the last four digits of its U.S. taxpayer identification number is: Viridos, Inc. (3940). The Debtor's corporate headquarters is located at: 11149 N. Torrey Pines Road, La Jolla, CA 92037.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT**:

1.     The Motion is granted on an interim basis as set forth herein.

2.     The final hearing (the "Final Hearing") on the Motion shall be held on _____, 2025, at__:__ _.m., prevailing Eastern Time.  Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on _____, 2025, and shall be served on:  (i) the Debtor, Viridos, Inc., 11149 N. Torrey Pines Rd., La Jolla, CA, Attn: Eric Moellering; (ii) proposed counsel to the Debtor, Womble Bond Dickinson (US) LLP, 1313 North Market Street, Suite 1200, Wilmington, Delaware, 19801 Attn: Morgan L. Patterson (morgan.patterson@wbd-us.com); (iii) counsel to the DIP Lender, Greenberg Traurig, LLP, One International Place, Suite 2000, Boston, MA, 02110 Attn: Jeffrey M. Wolf (Jeffrey.Wolf@gtlaw.com); and (iv) Office of The United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 Attn: Timothy J. Fox (Timothy.Fox@usdoj.gov). In the event no objections to entry of the Final Order on the Motion are timely received, this Court may enter such Final Order without need for the Final Hearing.

3.     Except as otherwise provided herein, the Debtor is authorized, on an interim basis and in its sole discretion, to:  (a) continue operating the Cash Management System as identified in the Motion; (b) honor its prepetition obligations related thereto; and (c) utilize existing business forms in the ordinary course of business, consistent with historical practice.

4.      The Debtor is further authorized, on an interim basis and in its sole discretion, to: (a) continue to use, with the same account numbers, the Bank Accounts in existence as of the Petition Date, including those accounts identified on **<u>Exhibit 1</u>** attached hereto; (b) use, in their present form, all existing correspondence and business forms (including letterhead and preprinted checks), as well as other documents related to the Bank Accounts existing immediately before the Petition Date, without reference to the Debtor's status as debtor in possession; *provided that* to the extent applicable, once the Debtor has exhausted its existing supply of checks and forms, the Debtor will reorder checks and forms with the designation "Debtor in Possession" and the corresponding bankruptcy number on all such checks and forms; *provided further that* within 14 days of the entry of this Interim Order, the Debtor will update any electronically produced checks to reflect its status as debtor in possession; (c) treat the Bank Accounts for all purposes as accounts of the Debtor as debtor in possession; (d) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, and other debits; and (e) pay any ordinary course Bank Fees incurred in connection with the Bank Accounts, irrespective of whether such fees arose prior to the Petition Date, and to otherwise perform their obligations under the documents governing the Bank Accounts.

5.      The banks at which the Bank Accounts are maintained are authorized to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtor as debtor in possession, without interruption and in the ordinary course, and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts and wires issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be.

6.      For banks at which the Debtor holds Bank Accounts that are party to a Uniform Depository Agreement with the Office of the United States Trustee for the District of Delaware

(the "U.S. Trustee"), the Debtor shall, as soon as practicable, (a) contact each bank, (b) provide the bank with the Debtor's employer identification number, and (c) identify each of its bank accounts held at such banks as being held by a debtor in possession in a bankruptcy case, and provide the case number.

7.      The Debtor is hereby relieved from the requirements of section 345(b) of the Bankruptcy Code pertaining to Investment Accounts held by the Debtor at Bank of America and Merrill Lynch, a Bank of America Company, by virtue of Bank of America maintaining a Uniform Depository Agreement with the U.S. Trustee, and, for a period of thirty (30) days, subject to the ability to seek further extensions, the Debtor is otherwise in compliance with the requirements of section 345(b) of the Bankruptcy Code.

8.      In the course of providing cash management services to the Debtor, each of the banks at which the Bank Accounts are maintained is authorized, without further order of this Court, to deduct the applicable fees and expenses associated with the nature of the deposit and cash management services rendered to the Debtor, whether arising prepetition or postpetition, from the appropriate accounts of the Debtor, and further, to charge back to the appropriate accounts of the Debtor any amounts resulting from returned checks or other returned items, including returned items that result from wire transfers or other electronic transfers of any kind, regardless of whether such items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers.

9.      Subject to the terms set forth herein, including without limitation Paragraph 8 hereof, each of the banks at which the Bank Accounts are maintained is authorized to debit the Debtor's accounts in the ordinary course and without further order of this Court on account of all

checks drawn on the Debtor's accounts which have been cashed at such banks' counters or exchanged for cashier's or official checks by the payees thereof prior to the Petition Date.

10.     Subject to the terms set forth herein, any bank may rely upon the representations of the Debtor with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtor prior to the Petition Date should be honored pursuant to any order of this Court, and no bank that honors a prepetition check or other item drawn on any account that is the subject of this Interim Order (a) at the direction of the Debtor, (b) in a good-faith belief that this Court has authorized such prepetition check or item to be honored, or (c) as a result of an innocent mistake made despite implementation of customary item handling procedures, shall be deemed to be nor shall be liable to the Debtor or its estate on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Interim Order.

11.     Any and all banks are further authorized to (a) honor the Debtor's directions with respect to the opening and closing of any Bank Account and (b) accept and hold the Debtor's funds in accordance with the Debtor's instructions; *provided that* the Debtor's banks shall not have any liability to any party for relying on such representations.

12.     The Debtor is authorized, with the prior written consent of the DIP Lender, to open any new Bank Accounts or close any existing Bank Accounts as it may deem necessary and appropriate in its sole discretion; *provided that* the Debtor shall give notice within 15 days to the U.S. Trustee and the subchapter V trustee of the opening or closing of any Bank Accounts; *provided*, *further*, *that* the Debtor (or its third-party designee) shall open any such new bank account at banks that have executed a Uniform Depository Agreement with the Office of the U.S. Trustee for the District of Delaware, or at such banks that are willing to immediately execute such an agreement.

13.     The requirement to establish separate accounts for cash collateral and/or tax payments is hereby waived.

14.     The Debtor is authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of this chapter 11 case with respect to prepetition amounts.

15.     Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed:  (a) an admission as to the validity of any prepetition claim against the Debtor; (b) a waiver of the Debtor's right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtor's rights or the rights of any other Person under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtor that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtor expressly reserves its rights to contest the extent, validity, or perfection or seek avoidance of all such liens.

16.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

17.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

18.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

19.     The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

20.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

**Exhibit 1**

**BANK ACCOUNT LIST**

| No. | Bank | Type of Account | Account No. |
|-----|------|-----------------|-------------|
| 1 | Bank of America | Concentration | 3707 |
| 2 | Bank of America | Accounts Payable Disbursement | 3726 |
| 3 | Bank of America | Payroll | 3745 |
| 4 | Bank of America | Brokerage/Investment | 6857 |
| 5 | Bank of America | Cash Collateral for Bank of America Credit Cards | 8520 |
| 6 | Bank of America | Investment | 1T00 |
| 7 | Merrill Lynch (A Bank of America Company) | Investment | 2319 |
| 8 | Merrill Lynch (A Bank of America Company) | Equity | Equity |

**<u>EXHIBIT B</u>**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| | Subchapter V |
| VIRIDOS, INC.,[1] | |
| | Case No. 25-10697 (CTG) |
| Debtor. | |

**FINAL ORDER AUTHORIZING THE DEBTOR TO (A) CONTINUE TO OPERATE
ITS CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN PREPETITION
OBLIGATIONS RELATED THERETO, (C) MAINTAIN EXISTING BUSINESS
FORMS, AND GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtor and debtor in possession (the "Debtor") for entry of a final order (this "Final Order"):   (i) authorizing the Debtor to: (a) continue to operate the Cash Management System (b) honor certain prepetition obligations related thereto, and (c) maintain existing business forms; and (ii) granting related relief; all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29,

---

[1]  The Debtor in this Chapter 11 Case and the last four digits of its U.S. taxpayer identification number is: Viridos, Inc. (3940).  The Debtor's corporate headquarters is located at: 11149 N. Torrey Pines Road, La Jolla, CA 92037.

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

2012; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtor's notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT**:

1.      The Motion is granted on a final basis as set forth herein.

2.      The Debtor is authorized, in its sole discretion, to: (a) continue operating the Cash Management System; (b) honor its prepetition obligations related thereto; and (c) utilize existing business forms in the ordinary course of business, consistent with historical practice.

3.      The Debtor is further authorized, in its sole discretion, to:  (a) continue to use, with the same account numbers, the Bank Accounts in existence as of the Petition Date; (b) use, in their present form, all existing correspondence and business forms (including letterhead and preprinted checks), as well as other documents related to the Bank Accounts existing immediately before the Petition Date, without reference to the Debtor's status as a debtor in possession; *provided that* to the extent applicable, once the Debtor has exhausted its existing supply of checks and forms, the Debtor will reorder checks and forms with the designation "Debtor in Possession" and the corresponding bankruptcy number on all such checks and forms; (c) treat the Bank Accounts for all purposes as accounts of the Debtor as debtor in possession; (d) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, and other

debits; and (e) pay any ordinary course Bank Fees incurred in connection with the Bank Accounts, irrespective of whether such fees arose prior to the Petition Date, and to otherwise perform its obligations under the documents governing the Bank Accounts.

4.       All banks at which the Bank Accounts are maintained are authorized to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtor as debtor in possession, without interruption and in the ordinary course, and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts and wires issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be.

5.       In the course of providing cash management services to the Debtor, each of the banks at which the Bank Accounts are maintained is authorized, without further order of this Court, to deduct the applicable fees and expenses associated with the nature of the deposit and cash management services rendered to the Debtor, whether arising prepetition or postpetition, from the appropriate accounts of the Debtor, and further, to charge back to the appropriate accounts of the Debtor any amounts resulting from returned checks or other returned items, including returned items that result from wire transfers or other electronic transfers of any kind, regardless of whether such items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers.

6.       Subject to the terms set forth herein, including without limitation Paragraph 5 hereof, each of the banks at which the Bank Accounts are maintained is authorized to debit the Debtor's accounts in the ordinary course and without further order of this Court on account of all checks drawn on the Debtor's accounts which have been cashed at such banks' counters or exchanged for cashier's or official checks by the payees thereof prior to the Petition Date.

7.      Subject to the terms set forth herein, any bank may rely upon the representations of the Debtor with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtor prior to the Petition Date should be honored pursuant to any order of this Court, and no bank that honors a prepetition check or other item drawn on any account that is the subject of this Final Order (a) at the direction of the Debtor, (b) in a good-faith belief that this Court has authorized such prepetition check or item to be honored, or (c) as a result of an innocent mistake made despite implementation of customary item handling procedures, shall be deemed to be nor shall be liable to the Debtor or its estate on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Final Order.

8.      Any and all banks are further authorized to (a) honor the Debtor's directions with respect to the opening and closing of any Bank Account and (b) accept and hold the Debtor's funds in accordance with the Debtor's instructions; *provided that* the Debtor's banks shall not have any liability to any party for relying on such representations.

9.      The Debtor is authorized, with the prior written consent of the DIP Lender, to open any new Bank Accounts or close any existing Bank Accounts as it may deem necessary and appropriate in its sole discretion; *provided that* the Debtor shall give notice within 15 days to the U.S. Trustee and the subchapter V Trustee of the opening or closing of any Bank Accounts; *provided*, *further*, *that* the Debtor (or its third-party designee) shall open any such new Bank Account at banks that have executed a Uniform Depository Agreement with the U.S. Trustee, or at such banks that are willing to immediately execute such an agreement.

10.     Nothing contained herein shall permit any bank at which the Bank Accounts are maintained to terminate any cash management services without thirty days prior written notice to the Debtor, U.S. Trustee, the DIP Lender, and the subchapter V trustee.

11.     The requirement to establish separate accounts for cash collateral and/or tax payments is hereby waived.

12.     The Debtor is authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of this chapter 11 case with respect to prepetition amounts.

13.     Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed:  (a) an admission as to the validity of any prepetition claim against the Debtor; (b) a waiver of the Debtor's right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtor's rights or the rights of any other Person under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtor that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtor expressly reserves its rights to contest the extent, validity, or perfection or seek avoidance of all such liens.

14.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

15.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

16.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

17.     The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

18.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

6